IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DESHAWN CHASE,                           :
                                         :
                    Petitioner,          :
                                         :
          v.                             :     Civil Action No. 19-1771-GBW
                                         :
ROBERT MAY, Warden, and                  :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
                    Respondents.         :

_____

DeShawn Chase. *Pro se* Petitioner.

Matthew Bloom, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

_____


**<u>MEMORANDUM OPINION</u>**[1]



December 14, 2022
Wilmington, Delaware

_____

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court is a Petition for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 filed by Petitioner DeShawn Chase.  (D.I. 3; D.I. 7;

D.I. 9)  The State filed an Answer in opposition, to which Petitioner filed a Reply.

(D.I. 13; D.I. 16)  For the reasons discussed, the Court will deny the Petition.

## I.    INTRODUCTION

On September 15, 2016, while monitoring surveillance video, a Downtown

Visions employee observed Petitioner conduct a hand-to-hand drug transaction on

the 900-block of Pine Street in Wilmington.[2]  (D.I. 13 at 1; D.I. 14-3 at 35-37; D.I.

14-9 at 31, 59-60)  The video captured Petitioner touching and grabbing an object

in his waistband multiple times.  (D.I. 13 at 1; D.I. 14-9 at 59)  The butt of a

handgun was visible at one point in the video and, at another point, Petitioner

pulled an apparent bundle of heroin, bounded together by a rubber band, out of his

pocket.  (D.I. 13 at 1-2; D.I. 14-3 at 59)  Thereafter, Petitioner approached a car,

looked around, and then engaged in a hand-to-hand transaction with an occupant of

the vehicle.  (D.I. 13 at 2; D.I. 14-9 at 59-60)  The Downtown Visions employee

relayed information about what she saw on the surveillance video to Officer Kane

---

[2]Downtown Visions is a management company for Wilmington's business district,
providing cleaning and safety service which, among other things, operates the
system of surveillance cameras throughout the City.  (D.I. 13 at 1 n. 1)

of the Wilmington Police Department, including a detailed description of the suspect and that the suspect had made some "hand-to-hand drug transactions." (D.I. 14-3 at 36)  The Downtown Visions employee stated that she "had observed the subject with four or five bundles of suspected Heroin in his hand." (*Id.*) Although the employee stated that the suspect "repeatedly reached for his waistband directly in the middle of his stomach" several times, and that he "seemed to be adjusting some item," the employee never specifically mentioned seeing the suspect with a gun. (D.I. 14-3 at 36, 42)

Officer Kane and his partner, Officer Kilmon, responded to the scene. After arresting and searching Petitioner, the officers found a .40-caliber handgun loaded with 14 rounds of ammunition, 234 bags of heroin, and 6 pills. (D.I. 13 at 2; D.I. 14-9 at 32-33)  The heroin weighed between 1.05 and 1.23 grams in total. (D.I. 14-9 at 71-72)

On November 7, 2016, a Delaware Superior Court grand jury indicted Petitioner on charges of: (i) drug dealing, in violation of 16 Del. C. § 4752(2); (ii) possession of a firearm during the commission of a felony ("PFDCF"), in violation of 11 Del. C. § 1447A (two counts); (iii) aggravated possession of heroin, in violation of 16 Del. C. § 4752(4); (iv) possession of a firearm by a person prohibited ("PFBPP"), in violation of 11 Del. C. § 1448; (v) possession of

2

ammunition for a firearm by a person prohibited ("PABPP"), in violation of 11

Del. C. § 1448; (vi) carrying a concealed deadly weapon ("CCDW"), in violation

of 11 Del. C. § 1442; (vii) illegal possession of a controlled substance, in violation

of 16 Del. C. § 4763(c); and (viii) possession of a weapon in a safe school zone, in

violation of 11 Del. C. § 1457.  (D.I. 14-3 at 7-10)  On January 13, 2017, Petitioner

filed a motion to suppress the evidence seized from his person at the time of his

arrest.  (D.I. 14-3 at 12-19)  The Superior Court denied the motion from the bench

on March 31, 2017 after conducting a suppression hearing.  (D.I. 14-3 at 58-60)

Petitioner's case proceeded to a jury trial on April 18, 2017.  (D.I. 13 at 3)

For the purpose of the PFBPP and PABPP charges, the parties stipulated that

Petitioner was a person prohibited from possessing a firearm or ammunition.  (D.I.

14-9 at 85-86)  On the second day of trial, the State realized that it had incorrectly

charged illegal possession of a controlled substance and therefore entered *a nolle*

*prosequi* on that count.  (D.I. 14-9 at 49)  At the close of the State's case-in-chief,

Petitioner moved for judgment of acquittal on the charge of drug dealing, arguing

that the State failed to present sufficient evidence that the heroin met the weight

threshold stated in the indictment.  (D.I. 14-9 at 87)  The Superior Court denied the

motion, and the jury subsequently found Petitioner guilty of all remaining charges

in the indictment.  (D.I. 13 at 3)  On August 11, 2017, the Superior Court

sentenced Petitioner as an habitual offender to an aggregate sentence of seventy-

five years of imprisonment at Level V, suspended after fifty years and nine months and followed by decreasing levels of supervision.  (D.I. 14-4 at 4-5)  Petitioner filed a timely notice of appeal, challenging the Superior Court's denial of his suppression motion.  The Delaware Supreme Court affirmed the Superior Court's decision on May 3, 2018.  *See Chase v. State*, 186 A.3d 102 (Table), 2018 WL 2077956, at *1 (Del. May 3, 2018).

On August 1, 2018, Petitioner filed in the Superior Court a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion for the appointment of counsel.  (D.I. 14-1 at 5, Entry Nos. 33 & 34; D.I. 14-7)  Petitioner's *pro se* Rule 61 motion asserted three grounds for relief: (1) Petitioner's right to be protected against double jeopardy was violated because Count Three of the indictment (aggravated possession) is a lesser-included offense of Count One (drug dealing); (2) defense counsel provided ineffective assistance by agreeing to strike elements from the indictment; and (3) the State did not prove every element of Petitioner's drug dealing charge beyond a reasonable doubt.  (D.I. 14-7 at 4)  The Superior Court granted Petitioner's request for the appointment of counsel.  In January 2019, appointed counsel filed an amended Rule 61 motion, arguing that Petitioner's convictions for drug dealing and aggravated possession should have merged at sentencing.  (D.I. 14-8 at 17-19)  The State concurred, and the Superior Court resentenced Petitioner on January 29,

2019 by vacating the additional punishment for aggravated possession. (D.I. 14-1 at Entry Nos. 48 & 52) Since the resentencing resolved Petitioner's sole claim for relief, the Superior Court denied as moot Petitioner's amended Rule 61 motion on June 17, 2019. (D.I. 14-1 at Entry No. 55) Petitioner did not appeal that decision.

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.

5

*See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999);

*Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in
> the courts of the State; or
>
> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such
> process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of

comity, gives "state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review

process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192

(3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the

court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451

n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised

the issue on direct appeal in the correct procedural manner, the claim is exhausted

and the petitioner does not need to raise the same issue again in a state post-

6

conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor

7

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v.*

---

[3]*Murray*, 477 U.S. at 496.

8

*Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III.   DISCUSSION

Petitioner's timely- filed Petition[4] and Reply (D.I. 16) assert the following

Claims: (1) the Superior Court "unreasonably applied" the correct governing legal

principles during Petitioner's suppression hearing when it denied Petitioner's

argument that the police lacked probable cause to search him and seize the

evidence incident to his arrest (D.I. 3 at 8-11; D.I. 16 at 2); (2) the Superior Court's

denial of his suppression motion was based on an unreasonable determination of

the facts in light of the evidence presented at the suppression hearing (D.I. 7 at 5);

(3) post-conviction counsel provided ineffective assistance by failing to argue that:

(a) defense counsel was ineffective for failing to competently argue his Fourth

Amendment claim during his suppression hearing (D.I. 9 at 6); (b) appellate

counsel was ineffective by not challenging the sufficiency of the evidence for his

drug dealing charge (D.I. 7 at 7; D.I. 9 at 8); (c) defense counsel was ineffective

for not objecting to the State's amendment of the indictment (D.I. 9 at 9); and (d)

there was insufficient evidence to support his drug dealing charge/conviction (D.I.

---

[4]Petitioner filed his original Petition on September 20, 2019, and his two
subsequent amended Petitions on December 10, 2019 and May 7, 2020.  (D.I. 3;
D.I. 7; D.I. 9)  Although the Court will consider the Claims raised in all three
Petitions, the Court will refer to the three versions as a singular "Petition."  For
ease of analysis, the Court has re-numbered the Claims without altering
Petitioner's arguments.

7 at 7); (4) defense counsel provided ineffective assistance by failing to "competently litigate [Petitioner's] Fourth Amendment claim" during his suppression hearing (D.I. 3 at 5); (5) the State failed to prove every element of his drug-dealing charge beyond a reasonable doubt (D.I. 3 at 7); and (6) appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence for his drug-dealing charge (D.I. 7 at 7).

## A. Claims One and Two: Fourth Amendment Violations

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that a federal court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state court. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing the petitioner's Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Notably, "an erroneous

10

or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

Claims One and Two assert that the Superior Court's denial of his motion to suppress was based upon an unreasonable application of clearly established Fourth Amendment principles and an unreasonable determination of the facts in light of the evidence presented during his suppression hearing. Petitioner, however, had a full and fair opportunity to litigate his Fourth Amendment claim. He filed a pre-trial motion to suppress the evidence obtained during the search incident to his arrest, and the Superior Court conducted a hearing and considered Petitioner's arguments before denying his suppression request. Petitioner challenged the Superior Court's denial of suppression motion on direct appeal, and the Delaware Supreme Court affirmed the trial court's decision. This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims in the Delaware state courts. The fact that Petitioner disagrees with the Superior Court's decision and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment arguments in Claims One and Two as barred by *Stone*.

## B. Claim Three:  Ineffective Assistance of Post-Conviction Counsel

In Claim Three, Petitioner contends that post-conviction counsel provided ineffective assistance by failing to argue that: (a) defense counsel was ineffective

11

for failing to competently argue his Fourth Amendment claim during his

suppression hearing; (b) appellate counsel was ineffective for not arguing that there

was insufficient evidence to support his drug dealing conviction; (c) defense

counsel was ineffective for not objecting to the State's amendment of the

indictment; and (d) there was insufficient evidence to support his drug dealing

charge/conviction. There is no federal constitutional right to counsel in collateral

proceedings, and freestanding claims of ineffective assistance of post-conviction

counsel are not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i)

("The ineffectiveness or incompetence of counsel during Federal or State collateral

post-conviction proceedings shall not be a ground for relief in a proceeding arising

under section 2254."); *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481

U.S. 551, 555 (1987). Thus, the Court will deny Claim Three for failing to present

a proper basis for federal habeas relief.

### C. Claims Four, Five and Six: Procedurally Barred

Claim Four asserts that defense counsel provided ineffective assistance

during Petitioner's suppression hearing,[5] Claim Five asserts that the State failed to

---

[5]It is well-settled that *Stone v. Powell*'s restriction on federal habeas review of
Fourth Amendment claims does not apply to "Sixth Amendment ineffective-
assistance-of-counsel-claims which are founded primarily on incompetent
representation with respect to a Fourth Amendment issue." *Kimmelman v.
Morrison*, 477 U.S. 365, 382-83 (1986).

prove every element of his drug-dealing charge beyond a reasonable doubt, and Claim Six asserts that appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence for his drug-dealing charge. Petitioner did not present Claim Five to the Delaware Supreme Court in his direct appeal and, since he did not appeal the denial of his Rule 61 motion, he did not present any of the instant Claims to the Delaware Supreme Court on post-conviction appeal. These circumstances demonstrate that Petitioner did not exhaust state remedies for Claims Four, Five, and Six.

At this juncture, any attempt by Petitioner to raise the Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)). Although Rule 61provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims. Similarly, the exceptions to the bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to

13

Claims Four, Five, and Six.  Therefore, the instant three Claims are procedurally defaulted, which means that the Court cannot review their merits absent a showing of either cause and prejudice or that a miscarriage of justice will result absent such review.

### 1. Cause for the defaulted Claims

Petitioner attempts to establish cause for his default of the instant three Claims by blaming post-conviction counsel's failure to raise Claims Four, Five, and Six in his Rule 61 proceeding, and by blaming appellate counsel's failure to raise Claim Five on direct appeal.  Ineffective assistance provided by a trial or appellate attorney can constitute cause for a procedural default if the particular ineffective assistance allegation was presented to the state courts as an independent claim and it was determined that the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89.  An ineffective assistance of trial or appellate counsel claim cannot constitute cause if the claim itself is procedurally defaulted. *See Edwards*, 529 U.S. at 451-54.

Here, Petitioner did not present his argument that appellate counsel was ineffective for failing to raise Claim Five on direct appeal in his Rule 61 proceeding.  Therefore, Petitioner's ineffective assistance of appellate counsel allegation is itself defaulted and cannot excuse Petitioner's default of Claim Five.

Petitioner also attempts to establish cause by blaming post-conviction counsel for not raising Claims Four, Five, and Six in his Rule 61 proceeding. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that: (1) the defaulted ineffective assistance of trial counsel claim is substantial; and (2) the post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*. *See Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019).

To demonstrate that an ineffective assistance of trial counsel claim is substantial, a petitioner must show the claim has "some merit" under the standard applicable to certificates of appealability. *See Gaines v. Sup't Benner Township, SCI,* 33 F.4th 705, 711 (3d Cir. 2022). In other words, "a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Workman,* 915 F.3d at 938 (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). "This is a light burden; [a petitioner] must show only that his claim represents something more than the absence of frivolity or the existence of mere good faith." *Gaines,* 33

15

F.4th at 711 (3d Cir. 2022). When making the threshold "some merit/substantiality" determination, the Court must "remain[ ] mindful that the 'substantiality' inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (cleaned up); *see also Bey v. Sup't Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) ("[W]hether [an ineffective assistance of counsel] claim is substantial is a threshold inquiry that does not require full consideration of the factual or legal bases adduced in support of the claims.") (cleaned up).

To satisfy the second *Martinez* requirement – that post-conviction counsel was ineffective – a petitioner must only show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.*, "that his state post-conviction counsel's performance fell below an objective standard of reasonableness." *Workman*, 915 F.3d at 941.

Claim Five asserts a violation of due process and Claim Six asserts ineffective assistance of *appellate* counsel. Therefore, *Martinez*'s limited exception to the procedural default doctrine cannot be used to excuse Petitioner's default of Claims Five and Six because these Claims do not assert ineffective assistance of *trial* counsel arguments.

Additionally, even though Claim Four asserts an ineffective assistance of trial counsel argument, *Martinez*'s limited exception to the procedural default

16

doctrine does not apply.  Prior to trial, Petitioner moved to suppress the handgun

and narcotics the police seized from him, arguing, *inter alia*,[6] that his arrest and

_____

[6]The suppression motion drafted by defense counsel actually asserted two
arguments.  In the first and primary argument, defense counsel contended that the
encounter between Petitioner and the police constituted a custodial arrest rather
than a brief restraint of liberty under *Terry v. Ohio*, 392 U.S.1, 19 (1968) ("*Terry*
stop") because the police put Petitioner in an arm-lock from behind and handcuffed
him.  (D.I. 14-3 at 13-14)  Defense counsel then argued that the handgun and
narcotics discovered during the subsequent pat-down search of Petitioner should be
suppressed under the Fourth Amendment of the United States Constitution and
Article 1 § 6 of the Delaware Constitution because the police lacked probable
cause to arrest and search Petitioner.  (D.I. 14-3 at 12-17 and n.2)  In the second
and alternate argument, defense counsel contended that, even if the encounter
qualified as a *Terry* stop, the police did not have a reasonable and articulable
suspicion of criminal activity to detain and search Petitioner.  (D.I. 14-3 at 17-19)
In its Reply, the State presumed that the issue was whether the police had probable
cause to arrest and search Petitioner and did not address whether the encounter
between the police and Petitioner could constitute a *Terry* stop.  (D.I. 14-3 at 26-
30)  During the suppression hearing, the Superior Court clarified that the issue was
whether there was probable cause for an arrest:

> You agree that the Court, in order – in order to consider
> this motion, and whether this action by the police officers
> is appropriate under the law and constitutional, that the
> Court has to consider whether they had probable cause to
> take [Petitioner] into custody?
>
> *              *              *
>
> So, then there is an agreement by counsel that the
> appropriate standard is probable cause, and the Court will
> not address a standard under a *Terry* stop.

(D.I. 14-3 at 50)  The State responded affirmatively, stating: "For the purposes of
this motion and these facts, the State is conceding that appropriate standard is
probable cause."  (D.I. 14-3 at 50).  Defense counsel also responded affirmatively,

17

search were not supported by probable cause. The Superior Court ruled from the bench and denied Petitioner's motion to suppress after determining that the officers had probable cause to arrest Petitioner because: (1) the Downtown Visions employee was a "past-proven reliable informant" who directly provided Officer Kane with a detailed and predictive tip describing Petitioner's appearance and his behavior of holding his waistband and adjusting something in his waistband; (2) Petitioner matched the description provided by the Downtown Visions employee; (3) the officers made adequate independent observations of Petitioner's blading behavior to corroborate the tip; and (4) based on their training, the officers viewed Petitioner's blading behavior as consistent with the characteristics of an armed gunman. (D.I. 14-3 at 58-60) The Superior Court's denial of Petitioner's motion to suppress indicates that it implicitly found the search of Petitioner's person and seizure of the evidence to be lawful because the search and seizure was incident to a legal arrest. *See, e.g., Juliano v. State,* 260 A.3d 619, 626 (Del. 2021) ("To be sure, the exception that authorizes a warrantless search of a person who has been lawfully arrested has long been recognized by the United States Supreme Court and [the Delaware Supreme] Court."); *Traylor v. State*, 458 A.2d 1170, 1173-74

---

stating: "[A]nd that's important, because, as we all know, probable cause is a higher standard than reasonable suspicion." (D.I. 14-3 at 51)

18

(Del. 1983). *See also United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

Petitioner contends that defense counsel erred during the suppression hearing by arguing that the warrantless seizure and search of his person should be reviewed under the probable cause standard applicable to arrests rather than under the reasonable articulable suspicion standard applicable to *Terry* stops and pat-down searches. In his Reply, Petitioner appears to assert that the search of his person and the resulting seizure of the handgun and narcotics went beyond the scope of a valid *Terry* stop and frisk under §§ 1902 and 1903 of Delaware's two-hour detention statute (11 Del. C. §1902 *et. al.*) because the police did not have a reasonable and articulable suspicion that he was armed and dangerous. (D.I. 16 at 5-8) More specifically, Petitioner cites *State v. Scott*, 2014 WL 598651 (Del. Super. Ct. Feb. 11, 2014) to support his argument that the officers violated § 1903 because they lacked a reasonable articulable suspicion that he was armed and dangerous when they searched him. (D.I. 16 at 7) Petitioner summarizes *Scott* as holding that the police "detention of [Scott] was valid" under 11 Del. Code § 1902," but the subsequent "pat down was not supported by a reasonable articulable suspicion that Scott was armed and presently dangerous." (D.I. 16 at 7) Given his summary of *Scott*, Petitioner appears to acknowledge that the initial police

19

detention in his case constituted a valid *Terry* stop under § 1902 while arguing that
the evidence obtained during the subsequent pat-down search should have been
suppressed because the police lacked a reasonable articulable suspicion of criminal
activity to conduct the search as required by § 1903. (*See* D.I. 16 at 7)

Petitioner's instant argument does not excuse his default of Claim Four
because it does not satisfy *Martinez*'s substantiality/"some merit" threshold. The
probable cause standard utilized for determining the lawfulness of an arrest –
which the Superior Court applied during the suppression hearing – is more difficult
to satisfy than the reasonable articulable suspicion standard utilized for
determining the validity of a *Terry* stop and frisk under §§ 1902 and 1903 of
Delaware's two-hour detention statute. *See Howard v. Voshell*, 621 A.2d 804, 806
(Del. Super. Ct. 1992) ("While Delaware does not require that an officer have
probable cause to stop and detain a motorist, the officer must still have at least a
'reasonable and articulable suspicion'."); *State v. Deputy*, 433 A.2d 1040, 1042
(Del. 1981) ("In short, our case law clearly establishes that the "reasonable ground
to suspect" language in s. 1902 is a lesser standard than probable cause."
Consequently, defense counsel created a higher hurdle for the State to overcome
during the suppression hearing by arguing that Petitioner's seizure constituted an
arrest subject to the probable cause standard than counsel would have created by
arguing that Petitioner's seizure constituted a *Terry* stop subject to the lower

20

reasonable articulable suspicion standard.  Additionally, given the Superior Court's

conclusion that the police had probable cause to arrest Petitioner, there was no

need for defense counsel to challenge the propriety of an alleged *Terry* stop and

frisk under §§ 1902 and 1903.[7]  *See, e.g., State v. Terry*, 227 A.3d 555 (Table),

---

[7]Even if the Superior Court's finding of probable cause did not render irrelevant
Petitioner's instant argument that the police search of his person was not justified
by a reasonable articulable suspicion of criminal activity, his argument lacks merit.
According to Petitioner, the officers lacked a reasonable articulable suspicion that
he was armed and dangerous because: "(1) the frisk occurred midday; (2) it was
not said that either officer felt threatened for their safety and why; (3) [Petitioner]
was outnumbered 2 to 1; (4) [Petitioner] was cornered-in; (5) [Petitioner] placed
[his] hands on the car as instructed; and (6) [Petitioner] was cooperative." (D.I. 16
at 3-4)  The specific indicia mentioned by Petitioner (*i.e.,* the search occurred
midday, the officers did not express concern for their safety, Petitioner was
outnumbered 2-1, and he was cooperative) are not exclusive prerequisites for
finding that an officer possessed a reasonable articulable suspicion that a detainee
was armed and dangerous.  Rather, these indicia are some of the factors that the
officers, and a court, must consider under the totality of the circumstances
standard.  *See, e.g., Lopez-Vazquez v. State*, 956 A.2d 1280, 128801289 (Del.
2008) (noting that determining the existence of "reasonable suspicion" is
"somewhat abstract" and indicating that there is no rigid number of events to be
considered as part of the totality of the circumstances).  As recently reiterated by
the Delaware Supreme Court:

> To determine whether reasonable suspicion exists, courts
> must examine the totality of the circumstances
> surrounding the situation as viewed through the eyes of a
> reasonable, trained police officer in the same or similar
> circumstances, combining objective facts with such an
> officer's subjective interpretation of those facts.  In
> determining whether there was reasonable suspicion to
> justify a detention, the court defers to the experience and
> training of law enforcement officers.

21

2020 WL 1646775, at *3 (Del. Apr. 2, 2020); *United States v. Massac*, 867 F.2d

174, 177 (3d Cir. 1989) (propriety of alleged *Terry* stop need not be reached if

police possessed probable cause to arrest). Therefore, Petitioner's contention that

defense counsel provided ineffective assistance during the suppression hearing by

failing to argue that the police lacked a reasonable articulable suspicion of criminal

activity to conduct a *Terry* pat-down search cannot be used to excuse Petitioner's

---

*State v. Murray*, 213 A.3d 571, 579 (Del. 2019) (cleaned up). Moreover, "[t]ipster cases, whether involving probable cause or reasonable suspicion determinations, focus on the tip's indicia of reliability." *United States v. Henley*, 941 F.3d 646, 654 (3d Cir. 2019).

During Petitioner's suppression hearing, the officers pointed to specific and articulable facts supporting their suspicion that Petitioner was carrying a weapon. These facts included the credible and reliable information provided by the Downtown Visions employee prior to the officers' detention of Petitioner that Petitioner had engaged in illegal drug transactions and that Petitioner repeatedly reached for his waistband and appeared to be adjusting an item. (D.I. 14-3 at 36-37, 39, 46); *see Turner v. Pierce*, 2015 WL 1304122, at *6 (D. Del. Mar. 19, 2015) ("subsidiary factual questions, including a credibility determination at a suppression hearing, are entitled to the presumption of correctness [under 28 U.S.C. § 2254(e)] rebuttable by clear and convincing evidence to the contrary.) The officers also described their independent observations of Petitioner's blading movements, testifying that, based upon their training and experience, they viewed those actions as indicating that Petitioner was carrying a gun. (D.I. 14-3 at 37-38, 43-45, 47); *see United States v. Murray*, 821 F.3d 386, 393 (3d Cir. 2016) (finding that suspected involvement in drug dealing provided reasonable suspicion that the defendant was armed). Given foregoing, the Court concludes that the totality of the circumstances provided the officers with a reasonable articulable suspicion that Petitioner was carrying a weapon, thereby justifying their subsequent pat-down search of Petitioner's person. *See Flowers v. State*, 195 A.3d 18, 30-32 (Del. 2018).

default of Claim Four under the limited *Martinez* exception because the argument lacks "some merit."

### 2. Prejudice and miscarriage of justice

Given Petitioner's failure to establish cause for his default of Claims Four, Five, and Six, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.

Accordingly, the Court will deny Claims Four, Five, and Six as procedurally barred.

### D. Motion to Proceed With Original Claims

Petitioner filed a letter Motion asserting that State did not address the Claims in his original Petition, which also asks the Court to consider the Claims raised in his original Petition along with the Claims raised in his two amended Petitions. (D.I. 17) Contrary to Petitioner's assertion, the State did address all the Claims raised in the original Petition and the two amendments. (*See* D.I.. 13) In addition, the Court has considered all the Claims raised by Petitioner in all three versions of his Petition. Therefore, the Court will dismiss the Motion as moot.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also

23

decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition must be denied. An appropriate Order will be entered.